

**FILED & ENTERED**

MAY 07 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>I.Khan Holdings, LLC,<br><br><br>                      Debtor(s). | Case No: 2:10-bk-11411-TD<br><br>Chapter: 11<br><br>MEMORANDUM OF DECISION<br><br>Date: April 7, 2010<br>Time: 1:00 P.M.<br>Location: Courtroom 1345<br>            Roybal Federal Building<br>            255 E. Temple<br>            Los Angeles, CA  90012 |

After a preliminary hearing on March 24, 2010, on a Motion for Relief from the Automatic Stay brought by First Trust Standard Bank with respect to real property, essentially the Debtor's sole significant asset, 1138-1140 South Broadway, Los Angeles, owned by I.Khan Holdings, LLC, Debtor and Debtor-In-Possession herein, the Court heard evidence from both sides at a hearing on April 7.  Having considered the pleadings and the evidence presented and the arguments of the parties, the Court hereby issues its findings of fact and conclusions of law.

The real property consists of an 11,455 square foot plot improved by a 4,820 square foot two-story commercial building and a parking lot.  The current gross rentals received by the Debtor total $5,500 per month or $66,000 per year.  Movant offers in evidence an appraisal

- 1

report opining a value of $1,150,000 on the basis of sales comparables and income.  Debtor offers an appraisal report opining a value of $2,120,000 based solely on sales comparables.

The debt held by Movant totals $1,579,714.56.  While Debtor challenges some of Movant's alleged costs, Movant's asserted costs have been documented and explained by Movant and appear to be reasonable.

In addition, the evidence supports Movant's claim that Debtor's property is further encumbered by debt and deeds of trust junior to Movant's totaling an additional $517,819.39 owed to Pacific City Bank.  The supporting evidence includes Debtor's Schedule D and Movant's Trustee's Sale Guarantee report.  Thus, secured debt against the Debtor's property totals some $2,097,534, plus accruing interest and costs.

Turning to the appraisal reports, both were prepared in February 2010, but cite differing sales comparables in support of their conclusions.  In effect, they argue "apples" versus "oranges" based on widely separated properties with widely differing characteristics.  The Court finds neither set of comparables wholly persuasive, but finds that under the circumstances of this case, a realistic valuation lies somewhere in between, perhaps closer to Movant's valuation.

It is noteworthy, however, that Debtor's appraisal report acknowledges a number of factors that the court finds detract from the value conclusions expressed.  Thus, Debtor's report acknowledges that although since 2002 the neighborhood has experienced in-fill residential and commercial development, "New condominium development in the [neighborhood] has come to an end with falling prices and slow rates of absorption, coupled with considerable investor and lending caution." (Anderson Report, Bates No. 197.)  It also notes that the County Assessor has valued the property currently at $780,076.  (Id. at 190.)  It further acknowledges that "due to current economic conditions rental rates and both commercial and residential property values are too low to provide an adequate return on construction costs at this time.  The present utilization of the property represents an interim use for the next three to five years." (Id. at 216.)  It adds: "Due to the recession, redevelopment of the downtown area for all property types has essentially ended.  It is anticipated to take three to five years before redevelopment resumes." (Id. at 198.)

On cross examination, Anderson, Debtor's appraiser, acknowledged that the sales comparables he used were all derived from 2009 sales (mostly mid- or early 2009) and that he found no 2010 "willing buyers and sellers." Anderson further acknowledged that the market had experienced a "big shock" in the fourth quarter of 2008 and a gradual decline since then. Yet Anderson claimed that the income approach to valuation was meaningless in this case though he acknowledged that the income approach was the norm for valuing Debtor's property. In the end, Anderson acknowledged that he was estimating value several years later in anticipation of future development; as his report said, [a] buyer would receive net income [from rent] "over the next five years and then sell the property for redevelopment." (Anderson Report at 181.) Anderson added a broad and hopeful conclusion: "Leave [the property] Vacant Until Property Values Increase." (Id. at 184.)

In the end, all sales comparables cited in the competing appraisals were derived from the past, while both appraisers acknowledged that the market was "weak," "distressed," and "declining." These characterizations of the market are strongly confirmed by Debtor's Statement of Financial Affairs, Answer to Question No. 1, showing a decline in rent realized from the property, from $93,048 in 2008, to $70,400 in 2009, to [a rate of $66,000 in 2010 as of Debtor's chapter 11 petition date].

Under the circumstances, the Court concludes that it is unrealistic and inappropriate to ignore the income from Debtor's property in arriving at a reasonable valuation. As a consequence, the Court concludes that Movant's appraisal is more appropriate in the sense that it deals with the immediate reality facing the parties: What is the current value of the property given a weak and declining market, with no willing buyers and sellers for property similar to Debtor's property and significantly declining rental rates with respect to the Debtor's property?

The "apples" and "oranges" opposing comparables reveal a wide disparity between values represented by past sales. At best, Debtor's evidence is not persuasive of the higher value postulated by Debtor's appraiser based on mid- and early 2009 actual sales of properties to buyers with unique needs (such as the city's need for parking adjacent to an existing city-

owned office building or a bank's need for parking [or perhaps future development] adjacent to its existing bank building).

Debtor makes much of the proximity of the historic and architecturally interesting "abandoned Herald Examiner Building" located across the street from Debtor's property, but the value attributed to this fact by Debtor's appraiser is predicated on future investment and development that is nowhere in sight and that would seem a remote possibility in light of current economic conditions and trends, as outlined throughout both appraisal reports, Debtor's and Movant's.  In the end, Debtor's viewpoint is speculative.

Finally, the Court concludes that Movant has sustained its burden of proof under 11 U.S.C. § 362(g) that Debtor has no realistic equity in the property.  Debtor's evidence does not support the conclusion that there is a reasonable likelihood of a successful reorganization within a reasonable time.  Rather, the conclusion reached by the Court is that there is no reasonable likelihood of a successful reorganization within a reasonable time.  Secondly, Debtor has failed to sustain its burden to prove that Movant's interest in the property is adequately protected.  Debtor's proposed disclosure statement and plan filed April 13, 2010, do not alter that conclusion, particularly in the face of Movant's motion for relief and its evidence.

The Motion for Relief from the Automatic Stay is granted.  A separate order will be issued.

DATED: May 7, 2010

_____
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4) Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) MEMORANDUM OF DECISION was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of 5/5/10, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

**Debtor**
I.Khan Holdings, LLC
1977 South Los Angeles Street
Los Angeles, CA 90011

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

John H Choi on behalf of Creditor First Standard Bank
johnchoi@kpcylaw.com

Jayne T Kaplan on behalf of Debtor I.Khan Holdings, LLC
kaplanlawoffices@sbcglobal.net

Dare Law on behalf of U.S. Trustee United States Trustee (LA)
dare.law@usdoj.gov

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page

**ADDITIONAL SERVICE INFORMATION** (if needed):

| Category I (Served by the Court via Notice of Electronic Filing ("NEF")). | Category II (Served by Court via U.S. mail). |
|---|---|
| | |

| Category III (To be served by the lodging party). |
|---|
| |